**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| DAVID EDEL; MARK RISLEY; | ) | |
| and their partnership | ) | |
| (the "EDEL-RISLEY PARTNERSHIP") | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| WES FARRELL and | ) | JURY TRIAL DEMANDED |
| 21 GOLF CLUB, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

Plaintiffs David Edel, Mark Risley, and the Edel-Risley Partnership, by and through their undersigned counsel, bring this Complaint against Defendants Wes Farrell and 21 Golf Club, LLC (collectively, "Defendants"), alleging as follows:

**INTRODUCTION**

1.      This action arises from Defendants' misappropriation and exploitation of Plaintiffs' intellectual property related to "El Boquerón"—a once-lost design of world-renowned golf course architect Dr. Alister MacKenzie.  David Edel and Mark Risley formed a partnership that owned the intellectual property but, through a pattern of deception and bad faith acts, Wes Farrell knowingly engaged in a years-long endeavor to wrongfully obtain that property and use it to bestow credibility on his own golf course development, which is currently underway near Aiken, South Carolina.

1

2.     Now, Farrell represents to investors and on his website that he is the rightful owner of the El Boquerón name and concept.   For example, Farrell states on his website, www.21golfclub.com, that he is developing a course that, "inspired by Dr. Alister MacKenzie's original plans, will at last give life to the famed 'Lost MacKenzie' of El Boquerón® in Argentina."

3.     Due to Defendants' conduct, Plaintiffs bring claims for violations of Federal trademark statutes, Georgia Deceptive Trade Practice Act violations, fraud, and civil theft, among others. Plaintiffs seek damages, including but not limited to compensatory and consequential damages, disgorgement of profits, punitive damages, costs, and attorneys' fees.  Plaintiffs also seek injunctive relief including the cancellation or transfer of Defendants' fraudulently obtained trademark registration, rejection of additional applications for fraudulently sought after marks, and an order requiring that Defendants remove all references on their golf course development to Plaintiffs' intellectual property, including but not limited to references to El Boquerón, The Lost MacKenzie, or Alister MacKenzie.

**PARTIES**

4.     Plaintiff David Edel is a resident of Colorado, residing at 1360 Pineridge Court, Castle Pines, CO 80108.

5.     Plaintiff Mark Risley is a resident of Illinois, residing at Sangamon County, Illinois, 4405 Cricket Point, Springfield, IL 62711.

6.     Plaintiffs Mark Risley and David Edel are each 50 percent partners in the Edel-Risley Partnership (the "Partnership") that arises out of an agreement between Risley and Edel. The Partnership is also a plaintiff in this action.

7.     Defendant Wes Farrell is a resident of Richmond County, Georgia, residing at 606 Milledge Rd., Augusta, GA 30904.

8.      Defendant 21 Golf Club, LLC ("21 Golf") is a foreign limited liability company organized under the laws of South Carolina with its principal place of business located at 606 Milledge Rd., Augusta, GA 30904.  21 Golf may be served a copy of the summons and Complaint through its registered agent, Registered Agents, Inc., at 6650 Rivers Ave., Suite 100, Charleston, SC 29406.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), as this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. This Court also has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

10.     This Court has personal jurisdiction over Farrell because he is domiciled in this district, residing at 606 Milledge Rd., Augusta, GA 30904.  This Court has personal jurisdiction over Defendant 21 Golf Club, LLC because it maintains its principal place of business at 606 Milledge Rd., Augusta, GA 30904, and because 21 Golf has purposefully directed its activities toward this forum and has transacted business within this district, giving rise to the claims asserted herein.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and because Defendants reside in this district.

## FACTUAL ALLEGATIONS

### *THE HISTORY OF EL BOQUERÓN*

12.     Dr. Alister MacKenzie, an Englishman and famed golf course architect, designed some of the most famous golf courses in the world.  Among others, his work includes Cypress Point Club, Crystal Downs Country Club, Royal Melbourne Golf Club, and, perhaps most famously, Augusta National Golf Club.

13.     On March 4, 1930, MacKenzie visited Estancia El Boquerón, located near Mar del Plata, Argentina.  His visit was at the invitation of the estate's owner, Enrique de Anchorena, who commissioned MacKenzie to prepare plans to redesign and expand the existing nine-hole golf course on the property. The plans MacKenzie produced were never implemented but remained with the family.

14.     After Enrique Anchorena's death in 1951, the property was divided among his heirs. One of those heirs, Enrique Anchorena Jr., kept the original MacKenzie plans framed in the family clubhouse.

15.     In 1998, Anchorena's nephew, Jaime Zuberbühler, was visiting his uncle.  After expressing interest, Zuberbühler's uncle gave Zuberbühler the original framed plans hanging over the fireplace.

### *DAVID EDEL'S ACQUISITION*

16.     Plaintiff David Edel is a famous golf figure in his own right, having created Edel Golf, a golf club manufacturer, and designed and manufactured (by hand) Bryson DeChambeau's first set of single-length golf clubs that DeChambeau would use to win the 2015 U.S. Amateur Championship and NCAA title.

4

17.     In 2007, Edel traveled to Argentina, and he and Zuberbühler toured the site of the original course at El Boquerón together.  At this meeting, Edel and Zuberbühler came to an agreement under which Zuberbühler would transfer the plans and exclusive rights to "El Boquerón" to Edel with the goal of developing the course in the United States.

18.     The purchase was evidenced by a duly signed agreement (the "Purchase Agreement") between Edel and Zuberbühler, with Edel paying $50,000 for exclusive rights to El Boquerón, along with the associated intellectual property, the guest book, and other documents.

19.     On July 23, 2007, Zuberbühler and Edel executed the Purchase Agreement at the Jockey Golf Club in Buenos Aires.

20.     Although the transaction was documented formally, it was also a transaction between friends, with Zuberbühler making the agreement because he trusted Edel to finally bring El Boquerón to life.  Indeed, one of the terms of the agreement was Edel's commitment to build, from the original MacKenzie plans, a championship golf course to be executed by a world-class design firm with a reputation for knowledge of MacKenzie's work.  If Edel did not develop El Boquerón within five years, Zuberbühler had a right to repurchase all the original materials for $50,000.  Zuberbühler has never exercised such right.

21.     The Purchase Agreement required that the golf course be named "El Boquerón."

### PUBLIC ESTABLISHMENT OF THE PARTNERSHIP'S RIGHTS: "THE LOST MACKENZIE" ARTICLE

22.     In late 2007, Travel + Leisure Golf, at the time a prominent golf magazine, published a feature article by Thomas Dunne titled "The Lost MacKenzie," which brought MacKenzie's El Boquerón plans to broader public attention and documented Edel's acquisition and intent to have the course built in the United States.

23.     This article constitutes a public record establishing Edel's prior commercial association with both the "El Boquerón" name and "The Lost MacKenzie" designation—years before Defendants claimed any interest in either.  The article's readership included affluent golf enthusiasts, the same consumer market Defendants now target with their infringing development.

24.     Sometime in 2009, Plaintiff Mark Risley invested funds in the venture to build El Boquerón, establishing the Partnership, in which Edel and Risley are both 50 percent partners.  In forming the Partnership, Edel orally contributed his ownership of rights to El Boquerón and related assets to the Partnership.

25.     Initially, the Partnership had a difficult time finding a developer for the project due to the recession that began in late 2007 and significantly impacted the American economy through 2009 and beyond.

26.     Even so, starting in 2009, the Partnership held multiple commercial discussions with potential developers throughout the United States, consistently identifying and promoting the project to all potential parties under the "El Boquerón" name and using "The Lost MacKenzie" designation, which efforts continued through Farrell's first contact with Edel in 2023.

27.     In or around 2009, Edel and Risley met with renowned golf course architect Tom Doak and members of his construction team in Oregon to discuss Doak's involvement in building El Boquerón.  The Partnership engaged in serious discussions with Doak regarding the project, but the parties ultimately did not reach an agreement.

28.     Between 2009 and 2010, Edel and Risley traveled to Montana to meet with developer Dave Douglass and two of his associates to discuss the development of El Boquerón. Douglass made a substantial offer to the Partnership, but the Partnership declined it.

29.     In or around 2010, Risley also contacted golf legend Greg Norman regarding the development of El Boquerón.  Norman was interested in executing the MacKenzie plans and made an offer to the Partnership.  The Partnership declined Norman's offer because Edel and Risley were committed to building the course in the United States, and Norman's proposal contemplated development in the United Kingdom.

30.     Between 2010 and 2012, Risley had discussions with the Trump organization in New York to discuss the development of El Boquerón.  The Trump team declined the opportunity, advising that the course was best suited to a private, exclusive club format, whereas they were interested in a more commercially oriented development.

31.     During the same period, the Partnership also approached the golf design firm of Coore & Crenshaw regarding their involvement in building El Boquerón.  Ben Crenshaw declined on behalf of the firm, communicating in a handwritten note to Risley that Coore & Crenshaw believed it would only be appropriate to build the course in Argentina on the site that Alister MacKenzie had originally envisioned.

32.     Between 2009 and 2012, Edel also had discussions with Casey Ingels of Tacoma, Washington, regarding development of the El Boquerón project on a site in Liberty Hill, Texas.  Ingels was a serious and interested potential developer, and Edel relocated his entire family and business to Texas in connection with the project.  Those efforts came to an end only after the primary investor was diagnosed with cancer and subsequently died, causing the project to be abandoned.

33.     In 2016, Edel engaged in discussions with Rich Postma, owner of US Signal and Arcadia Bluff Golf Club, regarding development of El Boquerón on a site in Lago Vista, Texas.  Edel and Postma conducted a site visit with principal architect Mike DeVries and engaged in

7

extensive discussions about the project.  Ultimately, the discussions did not result in a deal because Postma wished to use a different architect and did not share the Partnership's vision for the project.

34.    In 2017, Edel engaged in discussions with Dan Bennett and Stuart Bruening, owners of Plum Creek, Beardance, and Colorado National Golf Clubs, regarding development of El Boquerón.  Edel conducted a site review with Bennett and Bruening.  Ultimately, Bennett and Bruening declined to move forward because they had sufficient demands on their resources from their existing golf operations.

35.    In 2018, Edel engaged in discussions with Michael Walrath, the owner of Ohoopee Match Club in Georgia, regarding development of El Boquerón.  Edel, architect Mike DeVries, and Colin Sheehan conducted a site visit with Walrath in connection with the proposed development.  Walrath ultimately declined to make an offer.

36.    In 2019, tennis star Andy Roddick made a verbal proposal to purchase the Partnership's El Boquerón rights.  Negotiations stalled because Roddick sought an outright purchase that would have excluded the Partnership from participation in the project.

37.    In 2023, after a pause in development efforts forced by the COVID-19 pandemic, Tim Ummel of Arm Chair Collective transmitted to the Partnership a memorandum of understanding for multiple golf course plans owned by the Partnership, including El Boquerón. The deal, however, was contingent on a funding raise, which ultimately did not materialize.

38.    In February of 2026, Ryan Hanks, developer of Highpoint Club in Florida, made an offer to purchase the Partnership's El Boquerón rights.  However, the deal fell through when the Partnership, through Edel, disclosed the El Boquerón Registration.

### FARRELL'S CAMPAIGN TO MISAPPROPRIATE THE PARTNERSHIP'S INTELLECTUAL PROPERTY

39.     Through reading "The Lost MacKenzie," Farrell—an attorney licensed to practice in Florida—became interested in exploiting the Partnership's intellectual property for his own commercial development.

40.     Farrell's having read the article is confirmed by his later decision to initiate contact with Edel through Dunne himself, the author of "The Lost MacKenzie."

41.     However, prior to contacting Edel, and unbeknownst to Edel or Risley, Farrell began executing his plan to misappropriate the Partnership's property.

42.     On June 16, 2022, without affiliation with the Partnership, any agreement, having spoken to Edel or Risley, ever, or any legitimate basis for ownership, Farrell filed a USPTO application to register "El Boquerón" as a service mark.  That application was later accepted on October 15, 2024, and the mark was registered (the "El Boquerón Registration").  In submitting the application, Farrell made material misrepresentations to the USPTO, including representing that there were no other owners of the mark, when he knew of Edel's prior rights through "The Lost MacKenzie" article.

43.     Around the same time, and confirming that Farrell knew of Edel's ownership rights, Farrell contacted Zuberbühler in Argentina through an agent, Andres Palandjoglou, and requested that Zuberbühler revoke the exclusive rights he had previously sold to Edel in 2007 and convey those rights to Farrell instead.  Zuberbühler declined.

44.     On July 25, 2024, Farrell filed a second USPTO application seeking to register "The Lost MacKenzie" as a service mark.  At the time of filing this Complaint, the application has not yet been granted.

9

45.    On December 5, 2024, Farrell filed a third USPTO application seeking to register "MacKenzie" as a service mark.  At the time of filing this Complaint, the application has not yet been granted.

46.    Each of these filings was made fraudulently and in bad faith, with actual knowledge of Edel's prior rights, and constitutes a deliberate effort to monopolize every brand element associated with the Partnership's project.

## FARRELL'S FRAUDULENT NEGOTIATIONS WITH THE PARTNERSHIP

47.    On January 13, 2023, Farrell, through Dunne, initiated contact with Edel.  Farrell expressed enthusiasm for the El Boquerón project and stated his interest in purchasing the Partnership's rights.  This outreach came approximately seven months after Farrell's first fraudulent trademark application and attempted revocation of the Partnership's exclusive rights.

48.    Over the following weeks, the parties engaged in extensive negotiations.  On January 31, 2023, Edel provided Farrell with a document setting out acceptable terms, which, among other things, included: (a) a purchase price of $350,000; (b) engagement of Mike DeVries as principal architect; (c) lifetime family memberships for Edel and Risley; and (d) access to 10 acres within the development for Edel's personal use or development.

49.    On February 10, 2023, in good-faith reliance on Farrell's representations that a commercial agreement was forthcoming, Edel shared with Farrell Partnership confidential materials including: photographs of the El Boquerón ledger book bearing MacKenzie's autograph; the Anchorena family's estancia branding iron; and the original El Boquerón scorecard.  Edel also shared El Boquerón green complex sketches prepared by Mike DeVries.  These materials were shared solely in reliance on Farrell's representations.

10

50.    Shortly thereafter, at Farrell's invitation, Edel traveled at his own expense to South Carolina to survey the property Farrell had selected to develop.

51.    On February 27, 2023, Farrell sent Edel a Letter of Intent (the "LOI"). Via text, Farrell admitted to seeking to create "an agreement based on what [Edel] said [he] wanted" and produced an offer that practically mirrored Edel's. The LOI further provides that the parties' rights and obligations under the LOI would cease only upon "a contractually allowable reason" and that it "is intended to be used for the purposes of binding the both of us to the terms provided in this LOI."

52.    Shortly after sending the LOI, Farrell withdrew from negotiations and took the position that he had no obligation to compensate Edel or the Partnership.

### DEFENDANTS' UNAUTHORIZED CONSTRUCTION AND EXPLOITATION OF THE PARTNERSHIP'S PROPERTY

53.    Notwithstanding his withdrawal from negotiations, Farrell proceeded to build a golf course using the Partnership's intellectual property without authorization.

54.    Defendants promoted the 21 Golf development using the "El Boquerón" name, the "Lost MacKenzie" designation, MacKenzie's name, and other associated historical information, presenting the development as though Defendants had independently discovered and owned the right to develop it using the Partnership's property.

11

55.     For example, 21 Golf's website bears the following on its front page:



**MACKENZIE COURSE - EL BOQUERÓN®**

The first course at 21 Golf Club has been 100 years in the making. At the height of his powers, the legendary Alister MacKenzie designed a golf course named El Boquerón for a wealthy Argentine family. Despite being considered one of his most daring designs, with nine expansive double greens, the course was never built and the concepts assumed lost. Thankfully, they were not. Captivated by Dr. MacKenzie's concept, our first course will at last give life to a modern interpretation of the famed "El Boquerón" in the Sand Hills of South Carolina. The development will be guided by the expertise of the MacKenzie Architectural Committee, including architect Brian Zager whose work includes collaborations with Tom Doak and The Lido. Every detail will reflect a respect for MacKenzie's principles and the timeless challenges of strategic golf. Additionally, we are exploring opportunities to use the course to introduce kids to the game through the First Tee and other organizations.

56.     Further, as of filing, 21 Golf's Instagram account has over 49,000 followers.  Its posts contain myriad references to the Partnership's intellectual property, including El Boquerón and its relationship with MacKenzie.

57.     Fine print on Defendants' website purportedly disclaims "formal affiliation with the original location or design," confirming the calculated nature of Defendants' conduct—a disclaimer designed to insulate Defendants from liability while they continued to exploit every element of the Partnership's property.

58.     Additionally, 21 Golf actively solicits customers and members across state lines, including through marketing materials stating that it is convenient to both Georgia and South Carolina and references on its site to the course being near Augusta National.  *See e.g.* www.21golfclub.com ("21 Golf Club is an invitation-only private golf club in the South Carolina Sand Hills, located approximately 15 miles and just a few minutes from the cities of Aiken,

12

South Carolina and Augusta, Georgia.").   21 Golf therefore places itself within interstate commerce for the purposes of federal law.

59.   When Edel confronted Farrell in December 2023, Farrell responded: "I intend to honor what we discussed and that has always been my intent." In December 2023 and again in January and February 2025, Farrell made further representations that he would compensate Edel and honor his contribution.  Defendants never provided any compensation.

60.   Throughout this period, construction and promotion of the course continued with the wrongful use of Partnership property without any authorization from the Partnership.

61.   At all relevant times, Defendant Farrell was the controlling member and managing agent of Defendant 21 Golf, with authority over its operations, direction, and commercial activities.

62.   Acting as 21 Golf's principal, Farrell carried out each of the acts alleged herein in furtherance of 21 Golf's commercial development. 21 Golf is therefore vicariously liable for all such acts as principal.

63.   To the extent any such acts were taken by Farrell in his individual capacity, 21 Golf ratified, adopted, and accepted the full benefit of those acts by proceeding to construct, market, and commercially exploit its golf development using the Partnership's marks, historical narrative, and proprietary materials obtained through Farrell's scheme.

### *THE ZUBERBÜHLER FAMILY REAFFIRMS EDEL'S EXCLUSIVE RIGHTS*

64.   On February 17, 2026, Jaime Zuberbühler wrote to the Alister MacKenzie Society in reference to Defendants' unauthorized construction of the 21 Golf development and misappropriation of the Partnership's intellectual property.

13

65.    Zuberbühler confirmed the history of the 2007 exclusive transfer and stated unequivocally that neither he nor his cousin Enrique de Anchorena had any formal involvement in Defendants' project, and that "the only owner to whom [they] assigned [their] rights was David Edel."

66.    This letter, from the very family Farrell attempted to manipulate, confirms that Defendants have no right to the "El Boquerón" name or any of the associated intellectual property.

67.    On June 10, 2026, Plaintiffs' counsel served Defendants with a written demand for compensation for their unauthorized use and exploitation of the Partnership's property. Defendants, through their counsel, refused to meet Plaintiffs' demand, necessitating this action.

## COUNT I
## FALSE OR FRAUDULENT TRADEMARK REGISTRATION —
## 15 U.S.C. § 1120
## (AGAINST FARRELL)

68.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    Edel, and later the Partnership, are prior users of "El Boquerón," "The Lost MacKenzie," and "MacKenzie" as service marks and trade names, with priority arising from Edel's 2007 acquisition, "The Lost MacKenzie" article documenting Edel's commercial association with the marks, and the Partnership's continued efforts to develop and market the El Boquerón project using the El Boquerón tradename, among other things—all of which predated Defendants' applications by many years.

70.    Farrell filed for and obtained the El Boquerón Registration with actual knowledge of Edel's prior rights, as established by, among other things, the publicly available "The Lost

14

MacKenzie" article that Farrell himself had read and Farrell's efforts to have Zuberbühler repurchase the rights to El Boquerón from Edel and sell them to Farrell.

71. In connection with the applications, Farrell knowingly made false and material representations to the USPTO, including falsely representing that there were no other parties with rights to the marks, when Farrell knew that Edel held prior rights to the marks.

72. In June 2022, in a declaration signed in conjunction with his application for the service mark El Boquerón, Farrell represented that "The signatory believes that the applicant is entitled to use the mark in commerce."

73. Farrell also represented that:

To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

74. Farrell made similar misrepresentations on declarations signed in January 2024.

75. Farrell made these misrepresentations to the USPTO with an intent to deceive the USPTO, such that the USPTO would register the fraudulent mark in Farrell's name.

76. But for Farrell's misrepresentations, the USPTO would not have allowed Farrell to register the trade name El Boquerón.

77. As a direct and proximate result of Farrell's fraudulent trademark registration and procurement, Plaintiffs have suffered and continue to suffer and are entitled to damages, including but not limited to damages to the Partnership's intellectual property and reputation, which includes but is not limited to Farrell's creating a cloud on the Partnership's rights that prevents the Partnership from marketing and selling those rights, Farrell's profits, costs, and, given this is an

15

exceptional case, attorneys' fees pursuant to 15 U.S.C. § 1117, in an amount to be determined at trial.

78.   Additionally, pursuant to 15 U.S.C. § 1119, Plaintiffs are entitled to the cancellation of the El Boquerón Registration and any other registration that Farrell fraudulently obtained or is attempting to obtain or an order transferring such registrations to the Partnership.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN —**
**15 U.S.C. § 1125(a)**
**(AGAINST ALL DEFENDANTS)**

79.   Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

80.   Defendants' use of the Partnership's intellectual property in interstate commerce, including the "El Boquerón" name, "The Lost MacKenzie" designation, and MacKenzie's name in connection with the promotion and development of the 21 Golf course is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Partnership, and as to the origin, sponsorship, or approval of Defendants' services in violation of 15 U.S.C. § 1125(a)(1)(A).

81.   The Partnership's intellectual property is distinct because it is comprised of unique, historically significant marks.

82.   The term "El Boquerón" translates in English to "The Anchovy." This is an entirely arbitrary term in that it bears no descriptive relationship to the services with which it is associated, *i.e.*, golf. Additionally, the term has gained significant distinctiveness over time through years of public and industry recognition.

83.   "The Lost MacKenzie" evokes a historical narrative, without describing golf services of any kind. That it was the title of the 2007 Travel + Leisure Golf article only enhances

16

its distinctiveness, as it gained substantial secondary meaning within the relevant consumer market.

84.     Although "MacKenzie" is, standing alone, a surname and therefore afforded less protection, here, when it is asserted in connection with golf course development services marketed to sophisticated consumers along with "El Boquerón" and "The Lost MacKenzie," it acquires a secondary meaning that provides distinctiveness.

85.     Farrell's recognition of sufficient commercial value in the marks to file three federal applications constitutes an admission that the marks carry consumer-facing distinctiveness.

86.     As a direct and proximate result of Defendants' intentional, willful, and malicious conduct in violation of 15 U.S.C. § 1125(a)(1)(A), Plaintiffs have suffered and continue to suffer irreparable harm and monetary damages, including but not limited to damages to the Partnership's intellectual property and reputation, in an amount to be determined at trial.  Among other things, Plaintiffs are entitled to injunctive relief requiring that Defendants cease the misappropriation and use of Partnership property, actual damages, Defendants' profits, and, given this is an exceptional case, attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT III**
**UNFAIR COMPETITION —**
**15 U.S.C. § 1125(a)**
**(AGAINST ALL DEFENDANTS)**

87.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

88.     In connection with the promotion, advertising, and development of the 21 Golf course, Defendants have made material, false, and misleading representations of the nature, characteristics, qualities, and origin of the "El Boquerón," "The Lost MacKenzie," and

"MacKenzie" names and designations in direct violation of the Partnership's intellectual property rights in violation of 15 U.S.C. § 1125(a)(1)(B).

89.    Through these false and misleading representations, Defendants have deliberately sought to associate the 21 Golf development with the Partnership's trademarks to create the false impression that the development is affiliated with, sponsored by, or approved by the Partnership, thereby misappropriating the commercial value, goodwill, and historical significance that the Partnership built in those marks.

90.    These representations have been made, among other places, on Defendants' website, www.21golfclub.com, as well as social media posts made by Defendants marketing and promoting their golf course development, affecting interstate commerce.

91.    These false and misleading representations are material to the purchasing decisions of affluent golf enthusiasts who are the target consumers for Defendants' invitation-only private club, and are likely to deceive a substantial portion of that audience into believing the 21 Golf development is affiliated with, approved by, or the authentic continuation of the Partnership's intellectual property.

92.    Defendants' actions have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion, deception, and mistake as to the Partnership's intellectual property.

93.    As a direct and proximate result of Defendants' intentional, willful, and malicious conduct in violation of 15 U.S.C. § 1125(a), Plaintiffs have suffered and continue to suffer irreparable harm and monetary damages, including but not limited to damages to the Partnership's intellectual property and reputation, in an amount to be determined at trial.  Plaintiffs are entitled to injunctive relief requiring that Defendants cease the misappropriation and use of Partnership

18

property, actual damages, Defendants' profits, and, given this is an exceptional case, attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT IV
## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT — O.C.G.A. §§ 10-1-370 *ET SEQ.*
## (AGAINST ALL DEFENDANTS)

94.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

95.     Defendants' use of the "El Boquerón" name, "The Lost MacKenzie" designation, and MacKenzie's name in commerce, in connection with their promotion and marketing of the 21 Golf development, constitutes one or more deceptive trade practices in violation of O.C.G.A. § 10-1-372, including, but not limited to: passing off the goods and services of the Partnership as Defendants' own; causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or affiliation of Defendants' services; causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with the Partnership; and representing that services have characteristics, qualities, or a provenance that they do not have.

96.     Defendants' conduct is willful and deliberate, as evidenced through, *inter alia*, Farrell's filing of three USPTO applications for trademarks which he knew belonged to the Partnership and his attempting to have Zuberbühler revoke Edel's contract rights.

97.     Plaintiffs are entitled to injunctive relief requiring that Defendants cease the misappropriation and use of Partnership property, costs, and attorneys' fees pursuant to O.C.G.A. § 10-1-373.

19

## COUNT V
## PROMISSORY ESTOPPEL
## (AGAINST FARRELL)

98.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    Through communications between Farrell and Edel over Farrell's use of the Partnership's property related to El Boquerón, Farrell represented that he would do a deal with Edel for the Partnership's property and framed the relationship he desired as a collaborative partnership.

100.    Farrell made definite and substantial promises to Plaintiffs in the LOI and after withdrawing the LOI—including his post-withdrawal representations in December 2023, January 2025, and February 2025 that he intended to honor the deal set out in the LOI and compensate Edel for his contribution.

101.    Plaintiffs reasonably and foreseeably relied on these promises to their detriment, including by sharing confidential and proprietary materials with Farrell on February 10, 2023, traveling at Edel's own expense to survey the development site, and refraining from taking legal action.

102.    Injustice can be avoided only by enforcing these promises.  Plaintiffs are entitled to damages in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

103.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

20

104. In the alternative to any binding contractual obligation, and to the extent the LOI or any other agreement between the parties is found unenforceable or inapplicable, Defendants have been unjustly enriched at Plaintiffs' expense.

105. Farrell structured the LOI, revoked it before signing, and built the course using Partnership property.

106. Defendants have received and continue to receive a substantial benefit from the Partnership's intellectual property, historical narrative, proprietary materials, and personal relationships, including the development and marketing of a luxury golf course under the El Boquerón and Lost MacKenzie brand—property and goodwill that Plaintiffs spent years developing.

107. Farrell's own statements, including his February 2025 acknowledgment that he needed to find an "agreeable price for the drawing" and honor Edel's "contribution in a meaningful way," constitute admissions that Defendants received something of value for which no compensation was paid. Further, the LOI is evidence of what the parties understood Edel's contribution was worth, even though no contract was formed.

108. It would be inequitable for Defendants to retain the benefits they have obtained at Plaintiffs' expense without compensation.

109. Plaintiffs are entitled to damages for Defendants' unjust enrichment in an amount to be determined at trial.

### COUNT VII
### FRAUD
### (AGAINST FARRELL)

110. Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

21

111.   On January 13, 2023, Farrell initiated contact with Edel via text message, stating "David, our mutual friend Thomas Dunne shared your contact in the hopes of discussing El Boqueron and our mutual love of golf and its history. Please let me know a good time for you. I look forward to it." Later that same day, after a call between the two and a text from Edel about how much Edel enjoyed it, Farrell further texted "The feeling is absolutely mutual. It was such a pleasure getting to know you and I look forward to continuing the conversation and growing our friendship."

112.   For months, Edel, on behalf of the Partnership, and Farrell negotiated, including Edel's sending an offer of what the Partnership wanted in the deal, and Farrell's response with the LOI.

113.   Through these and subsequent communications, Farrell represented that he wanted to do a deal with Edel for the Partnership's property and framed the relationship he desired as a collaborative partnership.

114.   These representations were false when made, as Farrell never had a present intent to perform.

115.   At the time he was making each of the misrepresentations set forth above, Farrell concealed from Edel that he had already, without Plaintiffs' knowledge: (a) on June 16, 2022—seven months before first contacting Edel—filed a fraudulent trademark application for the "El Boquerón" mark with the USPTO, asserting that he was the rightful owner of the mark; (b) around the same time as his June 2022 trademark application, contacted Zuberbühler in Argentina through an agent and requested that Zuberbühler revoke the exclusive rights he had previously sold to Edel in 2007 and convey those rights to Farrell instead, which Zuberbühler declined to do; and (c) intended from the inception of negotiations on January 13, 2023, to misappropriate the

22

Partnership's property and confidential materials to develop his own golf course without compensating Edel or the Partnership.

116.   Farrell's true purpose was to extract the Partnership's property and historical narrative for use in his own development without authorization or compensation.

117.   Plaintiffs relied on Farrell's material misrepresentations, including by sharing Partnership confidential materials with Farrell on February 10, 2023, traveling at Edel's own expense to survey the development site, and refraining from taking legal action.

118.   That reliance was justifiable due to specific misrepresentations and concealments made by Farrell after Farrell had already begun to use the Partnership's intellectual property without authorization.

119.   On December 8, 2023, Farrell represented that he intended to honor what they had discussed and that it had always been his intent to do so; on December 10, 2023, Farrell represented that "[o]ur intention, with your blessing and involvement, is to honor what we discussed" and that Mike DeVries would be the top choice for architect; on January 27, 2025, Farrell represented that he hoped Edel would be involved in "what we are building" and that he intended to honor Edel's "contribution to bringing a version of the design to life"; on February 11, 2025, Farrell represented a desire to "purchase the [MacKenzie] drawing and honor [Edel's] involvement"; and on February 18, 2025, Farrell represented that he was committed to "honoring your contribution in a meaningful way."

120.   Moreover, Farrell concealed his fraudulent filing of his applications for trademarks belonging to the Partnership, and Edel and Risley had no reason to believe that anyone would attempt to steal the Partnership property.

121.    Farrell made each of these representations knowing their falsity to induce Edel and the Partnership to continue refraining from asserting their legal rights while Farrell completed construction and commercialization of the 21 Golf development.

122.    As a direct and proximate result of Farrell's misrepresentations, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the value of the proprietary materials Farrell extracted from Plaintiffs and used without authorization, Plaintiffs' out-of-pocket expenses incurred in reliance on Farrell's misrepresentations, such as Edel's travel expenses associated with visiting Farrell's development site, and the diminution in value of the Partnership's intellectual property caused by Farrell's unauthorized exploitation of that property.

123.    Plaintiffs further seek an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 based on Farrell's intentional, willful, and malicious conduct.  Farrell acted with specific intent to cause harm within the meaning of O.C.G.A. § 51-12-5.1(f), and accordingly no cap applies to the punitive damages recoverable herein.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**
**(AGAINST FARRELL)**

124.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

125.    The particular circumstances of this case created in Farrell an obligation to communicate material facts that Farrell, instead, suppressed.  Farrell—an attorney governed by rules of professional conduct and ethics—initiated contact with Edel on January 13, 2023, expressly invoking the recommendation of their mutual friend Thomas Dunne and representing a desire to work collaboratively with Edel on the El Boquerón project.  Over the following weeks,

24

Farrell cultivated a relationship of personal trust and friendship with Edel through repeated assurances of good faith and mutual purpose.

126. This relationship was evidenced when, in reliance on Farrell's representations of a collaborative commercial relationship, Edel disclosed on February 10, 2023, the Partnership's confidential materials—including photographs of the El Boquerón ledger book bearing MacKenzie's autograph, the Anchorena family's estancia branding iron, and the original El Boquerón scorecard. He also shared architectural sketches prepared by Mike DeVries. All of these were materials that would not have been shared absent the trust Farrell had cultivated.

127. Moreover, Farrell solicited and accepted these disclosures and further invited Edel to travel at his own expense to survey the development property, all while holding himself out as a good-faith prospective partner. By reason of this course of conduct, Edel and the Partnership reposed a special confidence and trust in Farrell, and Farrell accepted that confidence, creating a relationship in which equity and good conscience required Farrell to act in good faith and disclose all facts material to the parties' negotiations.

128. These facts also created a confidential relationship between the Partnership, Edel, and Risley, on one hand, and Farrell, on the other.

129. However, Farrell did not act in good faith and instead concealed material facts from Edel, Risley, and the Partnership, including that, without Plaintiffs' knowledge, he had: (a) filed a fraudulent trademark application for the "El Boquerón" mark; (b) attempted to have Zuberbühler revoke Edel's contractual rights under the 2007 Purchase Agreement; (c) intended to misappropriate the Partnership's property to develop his own golf course without compensating Edel or the Partnership.

130.    Farrell made these omissions of material fact knowingly, with the intent to induce Plaintiffs to provide the Partnership's confidential information and historical narrative for use in Farrell's own development without authorization or compensation and to forgo asserting their legal rights.

131.    Plaintiffs justifiably relied on Farrell's material concealments, including by sharing Partnership confidential materials with Farrell on February 10, 2023, traveling at Edel's own expense to survey the development site, and refraining from taking legal action.

132.    That reliance was justifiable due to the concealments and specific misrepresentations made by Farrell, as enumerated *inter alia* in Count VII, *supra*, after Farrell had already begun to use the Partnership's intellectual property without authorization.

133.    Moreover, Farrell concealed his fraudulent filing of his applications for trademarks belonging to the Partnership, and Edel and Risley had no reason to believe that anyone would attempt to steal the Partnership property.

134.    As a direct and proximate result of Farrell's fraudulent concealment, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the value of the proprietary materials Farrell extracted from Plaintiffs and used without authorization, the Plaintiffs' out-of-pocket expenses incurred due to Farrell's fraudulent concealment, such as Edel's travel expenses associated with visiting Farrell's development site, and the diminution in value of the Partnership's intellectual property caused by Farrell's unauthorized exploitation of that property.

135.    Plaintiffs further seek an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 based on Farrell's intentional, willful, and malicious conduct.  Farrell acted with specific intent

26

to cause harm within the meaning of O.C.G.A. § 51-12-5.1(f), and accordingly no cap applies to the punitive damages recoverable herein.

## COUNT IX
## CIVIL THEFT BY TAKING — O.C.G.A. §§ 51-10-6, 16-8-2
## (AGAINST ALL DEFENDANTS)

136.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

137.    Defendants have intentionally and unlawfully misappropriated the Partnership's property—including the El Boquerón intellectual property, associated branding, historical narrative, goodwill and proprietary materials—without the Partnership's consent, and with the intent to deprive the Partnership of its right to and benefit from that property.

138.    As part of this scheme, Farrell registered "El Boquerón" under his own name and has attempted to register "The Lost MacKenzie" and "MacKenzie".

139.    Additionally, under false pretenses and while concealing the prior trademark filings, Farrell fraudulently induced Edel to share on February 10, 2023, certain confidential Partnership materials.

140.    After extracting those materials, Farrell withdrew from negotiations and, without any license or agreement, proceeded to construct and commercially exploit the 21 Golf development using the "El Boquerón" and "Lost MacKenzie" names and all associated historical information, presenting the project as though Defendants had independently discovered and owned the right to develop it, creating consumer confusion and wrongly linking 21 Golf with the Partnership's intellectual property.  Defendants are not using the Partnership's property for separate and distinct services but instead are directly replicating the Partnership's golf course development projects using Partnership property.

27

141. Notwithstanding Farrell's repeated post-withdrawal representations in December 2023, January 2025, and February 2025 that he intended to honor his obligations and compensate Edel for his contribution, Defendants provided no compensation and continued to misappropriate the Partnership's property without authorization.

142. Defendants' conduct constitutes civil theft under O.C.G.A. § 51-10-6, which authorizes any owner of personal property to bring a civil action to recover damages from any person who "commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property," including claims for theft by taking under § 16-8-2.

143. Plaintiffs are entitled to recover damages in an amount to be determined at trial.

144. Plaintiffs further seek an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 based on Defendants' intentional, willful, and malicious conduct. Defendants acted with specific intent to cause harm within the meaning of O.C.G.A. § 51-12-5.1(f), and accordingly no cap applies to the punitive damages recoverable herein.

**COUNT X**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(AGAINST FARRELL)**

145. Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

146. Farrell's fraudulently registering the trademark for "El Boquerón" and fraudulently applying for the trademarks "The Lost MacKenzie" and "MacKenzie" constitute wrongful conduct without privilege.

147. In applying for these trademarks, Farrell knowingly made misrepresentations that there were no other users or owners of the trademarks, when he was aware that Edel was the user and owner of the trademark.

28

148.     Farrell acted purposely and with malice with the intent to injure Plaintiffs. Specifically, Farrell registered and applied for the trademarks to knowingly and wrongfully steal Plaintiffs' ownership rights in the trademarks, such that the applications and El Boquerón Registration created a cloud on the Partnership's title to the marks that deterred third-party purchasers from acquiring those rights from Plaintiffs.

149.     In February 2026, Farrell's actions caused a third party, Ryan Hanks, to discontinue and/or fail to enter into an anticipated business relationship with Plaintiffs. Specifically, the deal to sell the development rights to El Boquerón fell through once Plaintiffs disclosed the El Boquerón Registration, fraudulently made by Farrell.

150.     But for Farrell's actions, the Partnership's deal with Hanks was reasonably likely to develop.

151.     Farrell's tortious conduct proximately caused damage to Plaintiffs.

152.     Plaintiffs are entitled to recover damages in an amount to be determined at trial.

153.     Plaintiffs further seek an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 based on Farrell's intentional, willful, and malicious conduct. Farrell acted with specific intent to cause harm within the meaning of O.C.G.A. § 51-12-5.1(f), and accordingly no cap applies to the punitive damages recoverable herein.

## COUNT XI
## DECLARATORY JUDGMENT
## (AGAINST ALL DEFENDANTS)

154.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

29

155.    An actual controversy exists between Plaintiffs and the Defendants regarding the Parties' respective rights related to the trademarks "El Boquerón," "The Lost MacKenzie," and "MacKenzie".

156.    Plaintiffs seek a declaration pursuant to 28 U.S.C. §§ 2201-2202 that, under applicable law:

        a.    The Partnership is the rightful owner of "El Boquerón," "The Lost MacKenzie," and "MacKenzie" trademarks;

        b.    That any trademarks registered or applied for by Farrell or 21 Golf inconsistent with the above-referenced ownership should be cancelled and/or transferred to the Partnership;

        c.    That the Partnership holds the exclusive right to use "El Boquerón," "The Lost MacKenzie," and "MacKenzie" as service marks and trade names in connection with golf course development services, and that Defendants' use of those marks is unauthorized; and

        d.    Such other and further declaratory relief as the Court deems just and proper.

**COUNT XII**
**ATTORNEYS' FEES — O.C.G.A. § 13-6-11**
**(AGAINST ALL DEFENDANTS)**

157.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

158.    Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense.

159.    Defendants have acted in bad faith throughout the transactions and dealings underlying this action.  Among other things, Farrell filed fraudulent trademark applications for

30

marks he knew belonged to Edel, attempted to have Zuberbühler revoke Edel's exclusive contractual rights, and entered negotiations with Plaintiffs under false pretenses—while concealing that he had already taken steps to misappropriate the Partnership's intellectual property—for the purpose of extracting Partnership property without authorization or compensation.

160.    Defendants thereafter proceeded to construct the 21 Golf development and commercially exploit the Partnership's intellectual property without authorization, refused to compensate Plaintiffs despite repeated demands, and made repeated post-breach representations that they intended to honor their obligations, only to take no action. Defendants' conduct has been willful, deliberate, and in bad faith within the meaning of O.C.G.A. § 13-6-11, and has caused Plaintiffs unnecessary trouble and expense in being required to institute and prosecute this action.

161.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been required to retain counsel and incur attorneys' fees and expenses of litigation.

162.    Plaintiffs are therefore entitled to recover their reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David Edel, Mark Risley, and the Partnership respectfully request that this Court enter judgment against Defendants Wes Farrell and 21 Golf Club, LLC, and grant the following relief:

a.    An order that Defendants are liable for all claims asserted herein;

b.    An order pursuant to 15 U.S.C. § 1119 canceling the El Boquerón Registration (USPTO Registration No. 7538290) and any other registration obtained by Defendants for marks

belonging to the Partnership or, in the alternative, an order transferring the El Boquerón Registration to the Partnership;

c. An order pursuant to 15 U.S.C. § 1118 requiring that Defendants destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession bearing the Partnership's marks, including but not limited to all use of the Partnership's trademarks online;

d. A permanent injunction, pursuant to 15 U.S.C. § 1116 and applicable Georgia law, enjoining Defendants and all persons acting in concert with them from: (i) using the "El Boquerón," "The Lost MacKenzie," or "MacKenzie" marks or any similar designation in connection with any golf course or related commercial enterprise; (ii) representing any affiliation with or rights to the Partnership's intellectual property; and (iii) otherwise exploiting any of the Partnership Property;

e. Damages in an amount to be determined at trial;

f. Disgorgement of all profits Defendants have derived from their unauthorized use of the Partnership's intellectual property;

g. Punitive damages for Defendants' intentional, willful, and malicious conduct under O.C.G.A. § 51-12-5.1;

h. Attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117, O.C.G.A. § 51-10-6, O.C.G.A. § 10-1-373, O.C.G.A. § 13-6-11, and as otherwise permitted by law;

i. A declaratory judgment in Plaintiffs' favor;

j. Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

k. Grant such other and further relief as the Court deems just and proper.

Plaintiffs David Edel, Mark Risley, and the Partnership demand trial by jury on all issues triable by a jury.

Dated: July 10, 2026

Respectfully submitted,

**LEE MEIER LAW FIRM**

/s/ *Cary R. Burke*

Cary R. Burke (Ga. Bar No. 757627)
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
(404) 474-7628
cburke@leemeier.law

**ALEX BARTKO LAW, LLC**

Alex J. Bartko (Ga. Bar No. 824472)
(*pro hac vice application forthcoming*)
3344 Peachtree Rd. NE, Suite 800
Atlanta, GA 30326
(470) 890-3285
ab@alexbartkolaw.com

***COUNSEL FOR PLAINTIFFS***
***DAVID EDEL, MARK RISLEY, AND THE EDEL-***
***RISLEY PARTNERSHIP***